Melissa Lynn Liberi

    v.                                     Case No. 16-cv-476-JL
                                             Opinion No. 2017 DNH 196

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Melissa Liberi moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter should be remanded to the Acting Commissioner for further proceedings.

## I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and is summarized here, rather than repeated in full.

Liberi has been given a number of diagnoses for mental impairments, including mood disorder, anxiety, depression, panic disorder without agoraphobia, panic disorder with agoraphobia,

rule-out posttraumatic stress disorder ("PTSD"),[1] and generalized anxiety disorder with panic. She has been treated with various medications[2] and has also received therapy.

Liberi applied for DIB and SSI in June of 2014. In August of 2014, she was seen by Dr. Sandra Vallery for a consultative examination. After diagnosing Liberi with social anxiety, generalized anxiety disorder, and depressive disorder not otherwise specified, Dr. Vallery prepared a Comprehensive Psychological Profile that includes opinions on Liberi's then-current level of functioning. Subsequently, Dr. Patricia Salt, a non-examining state-agency psychological consultant, evaluated the medical evidence of record including Dr. Vallery's profile. Dr. Salt determined that Liberi had two mental impairments, anxiety disorders and affective disorders, but that neither impairment significantly limited her mental ability to perform

---

[1] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

[2] Specifically, Liberi has been given prescriptions for Effexor, Klonopin, Prozac, Viibryd, Lamotrigine, Paxil, Hydroxyzine, Paroxetine, Alprazolam, Citalopram, Xanax, Alprazole, and Celaxa.

basic work activities.

In February of 2015, in connection with Liberi's successful application for benefits from the State of New Hampshire's program of Aid for the Permanently and Totally Disabled, Dr. Peter Mosbach, a psychological consultant who reviewed the medical evidence but did not examine Liberi, completed a Mental RFC Worksheet on her.[3] He listed two impairments: (1) anxiety and panic attacks; and (2) depression/mania. The worksheet asked Dr. Mosbach to evaluate Liberi's ability to perform 16 specific activities. He found that she: (1) was not limited in her ability to perform three activities; (2) had slight limitations in performing eight activities; and (3) had moderate limitations in performing five activities (maintaining attention and concentration to sustain employment, working at a consistent pace, interacting and cooperating appropriately with co-workers, interacting appropriately with the general public, and traveling outside the home).

In September of 2015, Liberi's treating psychiatrist, Dr. Kenneth Cohen, completed a Mental Impairment Questionnaire on

---

[3] "RFC" is an acronym for "residual functional capacity," which is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1519 & 416.919.

5

Liberi.  At that point, he had been treating Liberi for about 16 months, had seen her more than a dozen times, and had seen her monthly since April.  In his questionnaire, Dr. Cohen listed diagnoses of panic disorder and agoraphobia.  In addition, he identified at least 16 different signs and symptoms of Liberi's mental impairments, including this one:

> Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week.

Administrative Transcript (hereinafter "Tr.") 415.  On the preprinted form he filled out, Dr. Cohen marked that symptom with an asterisk and annotated it: "Key symptom!"  Id.

In the section of the questionnaire devoted to functional limitations, Dr. Cohen opined that Liberi: (1) had extreme difficulties in maintaining social functioning; (2) had marked restrictions on her activities of daily living; (3) had marked difficulties in maintaining concentration, persistence, or pace; and (4) had experienced four or more episodes of decompensation within a 12-month period, each of at least two weeks duration.

With respect to the 16 mental abilities and aptitudes needed to do unskilled work, Dr. Cohen opined that Liberi was: (1) limited but satisfactory in one ability; (2) seriously limited but not precluded in seven abilities; (3) unable to meet

competitive standards in five abilities (maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a routine work setting); and (4) had no useful ability to function in two areas (working in coordination with or proximity to others without being unduly distracted, and dealing with normal work stress).[4]  In addition, Dr. Cohen opined that Liberi had an anxiety-related disorder and a complete inability to function independently outside of her home, and that she would be absent from work more than three days per month as a result of her mental impairments or treatment for them.

After Liberi's applications were denied at the initial level, she received a hearing before an Administrative Law Judge ("ALJ").  At the hearing, the ALJ took testimony from a vocational expert ("VE").  The ALJ began by asking the VE what

_____

[4] These tallies do not add up to 16 because Dr. Cohen neglected to offer an opinion on one of the abilities listed in the questionnaire.

jobs could be performed by a person with the following

characteristics:

> Let's assume a hypothetical individual [of] the
> claimant's same age and education with the past jobs
> you've described. Further assume that this individual
> is limited to the following. This will be a non-
> exertional limitation. This individual will have the
> following psychological limitations. Limited to
> perform[ing] simple routine tasks. This individual
> can frequently respond to co-workers and the public.

Tr. 80. The VE testified that the ALJ's hypothetical individual

could not perform Liberi's past jobs, because they are all semi-

skilled, but further testified that such a person could perform

the unskilled jobs of merchandise marker, office helper, and

dietary aide. When the ALJ changed the hypothetical to assume

an "individual [who] could frequently interact with supervisors,

occasional[ly interact with] co-workers, and never [interact

with] the public," Tr. 81, the VE testified that such a person

could perform the jobs of merchandise marker, office helper, and

housekeeper. Then, the VE testified that all work would be

precluded if the hypothetical individual could never interact

with co-workers. Finally, the ALJ posed a fourth hypothetical,

which added to his first hypothetical "a limitation that this

individual would be off-task up to 15 percent of the day due to

psychological reasons." Tr. 82. The VE testified that such a

person would be unemployable. After the ALJ finished

questioning the VE, Liberi's counsel asked the VE about the effect of being absent from work three times a month, and the VE testified that "the customary tolerance would be no more than one [time] per month." Tr. 83.

After the hearing, the ALJ issued a decision in which he gave: (1) little weight to the opinions of Dr. Salt; (2) little weight to the opinions expressed in Dr. Vallery's Comprehensive Psychological Profile; (3) great weight to the opinions in Dr. Mosbach's Mental RFC Worksheet; and (4) little weight to the opinions in Dr. Cohen's Mental Impairment Questionnaire.

The ALJ's decision also includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: anxiety disorder and affective disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to perform[ing]

simple routine tasks with frequent interaction with
supervisors and occasional interaction with coworkers.
The claimant can never interact with the public.

. . . .

6. The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

. . . .

10. Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 22, 23, 28 29. The ALJ concluded by finding that Liberi was

not disabled because she was capable of performing the jobs of

price marker, office helper, and housekeeper.

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability. See 42 U.S.C. § 423(a)(1)(A)-(D). To be eligible

for supplemental security income, a person must be aged, blind,

or disabled, and must meet certain requirements pertaining to

income and assets. See 42 U.S.C. § 1382(a). The question in

this case is whether the ALJ correctly determined that Liberi

was not under a disability from March 1, 2010, through October

23, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported

> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

## B. Liberi's Claims

Liberi claims that the ALJ erred by: (1) crafting her RFC

in reliance upon his own lay interpretation of raw medical data;

(2) failing, at one or more steps in the sequential evaluation

process, to consider her panic disorder with agoraphobia as an

impairment separate from her generalized anxiety disorder; and

(3) failing to give good reasons for discounting Dr. Cohen's

opinions. While it is a close call, Liberi's third claim of

error is persuasive, and dispositive.

Under the applicable regulations, the opinions of a

treating source such as Dr. Cohen are entitled to controlling

weight if they are "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and [are] not

inconsistent with the other substantial evidence in [a

claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2) &

416.927(c)(2). When an ALJ does not give controlling weight to

a treating source's opinion, he must still determine how much

weight to give that opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source offering the opinion; and (6) any other relevant factors.  See §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6).  After an ALJ performs the analysis described above, "[i]n many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Hunt v. Colvin, No. 16-cv-159-LM, 2016 WL 7048698, at *7 (D.N.H. Dec. 5, 2016) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996)).  Finally, an ALJ must give "good reasons in [his] decision for the weight [he] give[s] [a claimant's] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

> To meet the "good reasons" requirement, the ALJ's reasons must be both specific, see Kenerson v. Astrue, No. 10-cv-161-SM, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (citation omitted), and supportable, see Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 4 (1st Cir. 2010).  In sum, the ALJ's reasons must "offer a rationale that could be accepted by a reasonable mind."  Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *9 (D.N.H. Apr. 16, 2012) (citing Lema v. Astrue, C.A. No. 09-11858, 2011 WL 1155195, at *4 (D.

Mass. Mar. 21, 2011)), <u>report and recommendation</u>
<u>adopted by</u> 2012 WL 1676984 (D.N.H. May 14, 2012).

<u>Jenness v. Colvin</u>, No. 15-cv-005-LM, 2015 WL 9688392, at *6
(D.N.H. Aug. 27, 2015).

In his Mental Impairment Questionnaire, Dr. Cohen found,
among other things, that Liberi was unable to meet competitive
standards for getting along with co-workers or peers without
unduly distracting them or exhibiting behavioral extremes, and
that she had no useful ability to work in coordination with or
proximity to others without being unduly distracted. Yet, the
ALJ found that Liberi had the capacity for occasional
interaction with coworkers. In addition, Dr. Cohen opined that
Liberi had a "complete inability to function independently
outside the area of [her] home," Tr. 419, and that she would
miss more than four days of work per month due to her mental
impairments. Either of those two opinions, if credited, would
compel a determination that Liberi was disabled.

As noted, the ALJ gave Dr. Cohen's opinions little weight.
He gave the following explanation for discounting those
opinions:

> Dr. Cohen's opinion is inconsistent with the medical
> evidence of record and his own progress notes. Dr.
> Cohen's opinion is so extreme that it would indicate
> the need for more extensive therapy, greater than the
> once a month frequency she was seen by Dr. Cohen.

14

> There is no indication in Dr. Cohen's treatment notes
> that he recommended or believed that the claimant
> should have additional counseling and/or psychotherapy
> outside the monthly visit with him.

Tr. 27. While the ALJ framed his rejection of Dr. Cohen's opinions in terms of inconsistency with the record, see 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4), the Acting Commissioner goes a bit further, suggesting that the ALJ's rejection of Dr. Cohen's opinion was also based upon the frequency with which Dr. Cohen examined Liberi and the nature and extent of the treatment he provided her, see §§ 404.1527(c)(2)(i)-(ii) & 416.927(c)(2)(i)-(ii). Claimant argues that the ALJ erred by basing his evaluation of Dr. Cohen's opinions upon his own lay determination of the course of treatment that would be appropriate for a patient with the limitations that Dr. Cohen ascribed to her. That is one of several problems with the reasons the ALJ gave for discounting Dr. Cohen's opinions.

As a preliminary matter, the ALJ's explanation for the weight he gave Dr. Cohen's opinions is inadequately specific. As Judge McCafferty explained in Jenness, "[a]n AJL must provide specific reasons for assigning weight to a treating source's opinion because specific reasons allow subsequent reviewers to know the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." 2015 WL
9688392, at *7 (internal quotation marks, brackets, and other
alterations omitted) (quoting Kenerson, 2011 WL 1981609, at *4;
citing SSR 96-2p, 1996 WL 374188, at *5). Here, there are
several ways in which the ALJ's explanation lacks the necessary
level of specificity.

First, like the explanation found wanting in Jenness, the
ALJ's explanation here is a "generic criticism[] seemingly
directed to Dr. [Cohen's] statement as a whole," 2015 WL
9688392, at *7, rather than a weighing of any of the specific
opinions expressed in Dr. Cohen's questionnaire. A failure to
tie an explanation to a specific opinion presents a significant
impediment to meaningful review. See id.

Second, while the ALJ said that "Dr. Cohen's opinion is
inconsistent with the medical evidence of record and his own
progress notes," Tr. 27, he did "not indicate which of Dr.
[Cohen's] opinions [was] inconsistent with [the medical evidence
and] his treatment notes," Jenness, 2015 WL 9688392, at *7.
That, too, is an impediment to meaningful review. See id.

In addition to indicating which particular opinion is
inconsistent with the record, an ALJ should also point to the
specific part of the record that is purportedly inconsistent

with an opinion he is discounting.  See Jenness, 2015 WL
9688392, at *7 (faulting an ALJ for referring to treatment notes
in general rather than "identify[ing] the [specific] treatment
notes to which he [was] referring"); see also Willey v. Colvin,
No. 15-cv-368-JL, 2016 WL 1756628, at *5 (D.N.H. Apr. 7, 2016)
(rejecting ALJ's determination that claimant's "reported daily
activities indicate[d] that she would be able to tolerate at
least light lifting and light exertion sitting and standing
requirements" when ALJ "did not point to any specific daily
activities that demonstrate[d] [claimant's] capacity to meet
those exertional requirements").  Indeed, the typical scenario
in which a court affirms an ALJ's decision to discount a
treating source's opinion on grounds of inconsistency takes the
form of an opinion that is directly contradicted by affirmative
medical evidence.

    For example, Judge Barbadoro had this to say when
determining that an ALJ had permissibly discounted the opinion
of a physician who had treated an applicant claiming to be
disabled by fibromyalgia:

        The ALJ observed that Dr. Kunz's opinion was
        inconsistent with the symptoms claimant reported to
        her neurologist during an office visit about five
        months after Dr. Kunz rendered his opinion.  And,
        indeed, the note generated by that office visit does
        not document symptoms consistent with Dr. Kunz's

                            17

> opinion, and it does not even mention fibromyalgia
> under the heading "problems" or the heading
> "diagnoses."

Lonek v. Berryhill, No. 16-cv-212-PB, 2017 WL 2538579, at *6

(D.N.H. June 12, 2017); see also Walter v. Colvin, No. 15-cv-

194-LM, 2016 WL 659721, at *9 (D.N.H. Feb. 18, 2016) ("[T]he ALJ

cites progress notes authored by Laurent documenting pleasant

cooperative behavior, which is inconsistent with Dr. Ford's

opinions that Walter has difficulties getting along with others

and maintaining socially appropriate behavior.  Thus, the ALJ

gave a good reason, rooted in the regulations and based on

substantial evidence, for discounting Dr. Ford's opinion.");

Estabrook v. Colvin, No. 13-cv-478-PB, 2014 WL 5361717, at *13

(D.N.H. Oct. 21, 2014) ("On the issue of physical exertion, the

ALJ found that Dr. Guiry's December 2011 opinion was more

consistent with the record as a whole.  Specifically, the ALJ

concluded that the objective evidence showed Estabrook had full

strength in her extremities, no swelling or joint tenderness,

normal gait, no weakness, the ability to heel and toe walk

without pain or difficulty, full range of motion of the back,

and normal finger dexterity, which were all inconsistent with a

limited ability to stand, walk, and sit.  Therefore, the

objective evidence was more consistent with the physical

exertion limits listed in Dr. Guiry's [less restrictive]
December 2011 opinion than in her prior two [more restrictive]
opinions.").

This case presents a scenario that is very different from
those in Lonek, Walter, and Estabrook.  Rather than pointing to
affirmative medical evidence in Dr. Cohen's treatment notes (or
anywhere else in the record) that is inconsistent with Dr.
Cohen's opinions, the ALJ based his decision to discount Dr.
Cohen's opinions on negative evidence, i.e., the lack of a
recommendation by Dr. Cohen that Liberi pursue more or different
treatment in the form of "additional counseling and/or
psychotherapy outside the monthly visit with him," Tr. 27.
While there may be cases in which a treating source's opinion is
properly rejected on inconsistency grounds due to negative
evidence in the claimant's treatment records, this is not one of
them.  For her part, the Acting Commissioner analogizes this
case to Baron v. Berryhill, No. 16-cv-308-JL, 2017 WL 3600402,
at *9 (D.N.H. Aug. 21, 2017), but that case too different from
this one to serve as a useful analog.

In Baron, the ALJ discounted a treating physician's opinion
for three reasons, including the "limited scope" of the
physician's treatment of the claimant, 2017 WL 3600402, at *9.

Judge Laplante explained his determination that substantial evidence supported the ALJ's evaluation of the treating physician's opinion this way:

> [T]he ALJ noted the lack of evidence of "any significant treatment undertaken to address the claimant's [back] pain."  Indeed, Dr. Niegisch's treatment notes document little if any treatment other than pain medication, and also document Dr. Niegisch's concerns — backed up by both test results and statements from Baron herself — that she was not even taking all of her prescribed pain medication.  Dr. Niegisch also reported Baron's resistance to engaging in formal pain management treatment.  And, as noted above, when Dr. Niegisch opined that Baron was suffering from low back pain that had lasted or could be expected to last at least twelve months, it had been 15 months since Baron had last complained about, or he had provided treatment for, Baron's back condition.

Id. (citation to the record and footnote omitted).  Here, by contrast, Liberi began treating with Dr. Cohen approximately 16 months before he completed his questionnaire.  He saw her more than a dozen times, and his treatment notes indicate that he was treating her by monitoring and adjusting the dosages of the medications he was prescribing her.  Thus, this is not a case like Baron in which a treating source offered an opinion on an impairment that he had not treated for an extended period of time.

Rather, the ALJ's rejection of Dr. Cohen's opinions rests on a more narrow form of negative evidence, i.e., the absence of

any recommendation by Dr. Cohen that Liberi engage in more
frequent treatment and/or a different kind of treatment.  With
respect to that "evidence," the court tends to agree with
claimant that the ALJ seems to have strayed outside his area of
expertise.

It is well established that an ALJ is not qualified to base
an RFC on the interpretation of raw medical data.  See Schwarz
v. Berryhill, No. 16-cv-163-SM, 2017 WL 3736789, at *6 (D.N.H.
Aug. 30, 2017) (citing Childers v. Colvin, No. 14-cv-270-JL,
2015 WL 4415129, at *2 (D.N.H. July 17, 2015)).  If an ALJ is
not qualified to interpret raw medical data in functional terms,
it is difficult to see how an ALJ is qualified to discount a
treating source's opinion based not upon an absence of treatment
but, rather, on an appraisal of a medical professional's
decisions as to the form or frequency of the treatment that he
has provided.  As an illustration of that point, the Acting
Commissioner refers to "the conservative treatment that Dr.
Cohen offered the Plaintiff for her mental health impairments,"
Resp't's Mem. of Law (doc. no. 13-1) 17, but the court, which is
no more a medical expert than the Acting Commissioner (or an
ALJ), is far from certain that the regimen of medication that
Dr. Cohen prescribed is a more conservative form of treatment

than the "additional counseling and/or psychotherapy" that the ALJ referred to in his decision.[5]  In short, the mere fact that Dr. Cohen did not suggest "additional counseling and/or psychotherapy" for Liberi, as opposed to pursuing what appears to have been a medicine-based approach to treating her mental impairments, is not a good reason for discounting his opinions.

The Acting Commissioner concludes her memorandum of law with the following argument:

> Plaintiff does not argue how the ALJ's assessment of the opinion was harmful.  Presumably, she suggests that the ALJ should have adopted Dr. Cohen's opinion as her RFC, which would have rendered her disabled. She fails, however, to point to record evidence that contradicts the ALJ's discussion of the evidence or that would support Dr. Cohen's extreme limitations.

> . . . .

> Plaintiff's argument with respect to the ALJ's compliance with the "good reasons" requirement fails. In addition, she fails to show that Dr. Cohen's treatment notes support the extremity of the limitations in the psychiatrist's opinion.  Even if the ALJ failed to comply with the procedural requirements of evaluating the treating psychiatrist's opinion, which the [Acting] Commissioner does not

---

[5] While the Acting Commissioner endorses the ALJ's reliance upon Dr. Cohen's failure to suggest "additional counseling and/or psychotherapy" as a basis for discounting his opinions, she does not mention the ALJ's finding that Liberi "report[ed] that she is unable to see her therapist any more than once a month due to financial constraints."  Tr. 24.  It is difficult to see how a treating source's failure to suggest treatment that a claimant cannot afford is a good reason for discounting that source's opinion.

concede, remand in this case would be futile where
there is no evidence to support the conclusion that
Plaintiff's mental health impairments were disabling
within the meaning of the Act.

Resp't's Mem. of Law (doc. no. 13-1) 17, 18 (citing <u>Shinseki v.</u>
<u>Sanders</u>, 556 U.S. 396, 409 (2009)).  That argument is somewhat
puzzling.

First, it is no mystery how claimant was harmed by the
ALJ's failure to give more weight to Dr. Cohen's opinions.  Dr.
Cohen opined that Liberi had a "complete inability to function
independently outside the area of [her] home."  Tr. 419.  It is
self-evident that such a limitation would preclude all work.
Dr. Cohen also opined that Liberi would miss more than four days
of work per month due to her mental impairments.  The VE
testified that with regard to missing work, "the customary
tolerance would be no more than one [absence] per month."  Tr.
83.  Thus, Dr. Cohen's second limitation would also preclude all
work.  Because Dr. Cohen gave at least two opinions that, if
credited, would necessarily lead to a determination that Liberi
was disabled, it is abundantly clear that she was harmed by the
ALJ's assessment of Dr. Cohen's opinions.[6]

---

[6] In addition to the two opinions noted above, Dr. Cohen
also opined that Liberi was unable to perform two functions
necessary for unskilled work and could not meet competitive
standards in five other areas.

Second, while the Acting Commissioner criticizes claimant for failing to point to record evidence that contradicts the ALJ's discussion of the evidence, that criticism presuppose a traditional discussion of affirmative medical evidence by the ALJ, such as a diagnostic finding by Dr. Cohen that was inconsistent with his opinions. But, as the court has already explained, the ALJ relied upon negative evidence, i.e., Dr. Cohen's failure to recommend "additional counseling and/or psychotherapy." Thus, it is not at all clear what kind of evidence the Acting Commissioner thinks would be necessary to contradict the ALJ's discussion. Moreover, shifting from consistency, see 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4), to length of the treatment relationship and frequency of examination, see §§ 404.1527(c)(2)(i) & 416.927(c)(2)(i), the fact that Dr. Cohen saw Liberi monthly, which the ALJ noted when explaining his decision to discount Dr. Cohen's opinions, would seem to bolster rather than undermine the reliability of Dr. Cohen's opinions.

Third, in the second paragraph of her argument, the Acting Commissioner appears to veer into the realm of supportability when she criticizes claimant for "fail[ing] to show that Dr. Cohen's treatment notes support the extremity of the limitations

in [his] opinion," Resp't's Mem. of Law (doc. no. 13-1) 18.

With respect to supportability, the applicable regulations

provide, in pertinent part:

> The more a medical source presents relevant evidence
> to support an opinion, particularly medical signs and
> laboratory findings, the more weight [the Social
> Security Administration ("SSA")] will give that
> opinion.  The better an explanation a source provides
> for an opinion, the more weight [the SSA] will give
> that opinion.

20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3).  Here, the

questionnaire that Dr. Cohen completed asked him to describe the

clinical findings that demonstrated the severity of Liberi's

mental impairments and symptoms.  He did so, writing:

> Melissa can appear well composed but always has an
> undercurrent of anxiety.  More recently, she has been
> far more agoraphobic [and] avoidant of people.  She is
> easily triggered into an overwhelming panic attack
> when stressed.

Tr. 414.  The questionnaire also asked Dr. Cohen to identify

Liberi's signs and symptoms.  He did so, with annotations.  <u>See</u>

Tr. 415.  Finally, the questionnaire asked Dr. Cohen to describe

any additional reasons why Liberi would have difficulty working

at a regular job on a sustained basis.  He did so, writing: "She

cannot leave her house alone.  Need[s] physical support of a

close person to get out of [her] house.  Anxiety attending any

function."  Tr. 419.  Based upon the foregoing, to the extent

25

that the Acting Commissioner is arguing that Dr. Cohen's opinions are inadequately supported, her argument is not supported by substantial evidence.

The Acting Commissioner winds up by arguing that remand would be futile because "there is no evidence to support the conclusion that [Liberi's] mental health impairments were disabling within the meaning of the [Social Security] Act." Resp't's Mem. of Law (doc. no. 13-1) 18. But Dr. Cohen's questionnaire expresses several specific opinions that, if credited, would be evidence that Liberi is unable to work. That, in turn, is evidence that supports a conclusion that her mental health impairments were disabling. So, the Acting Commissioner's argument, as stated, fails.

However, if the Acting Commissioner's argument is not that there is no evidence to support a finding of disability but, rather, that there is no evidence that would allow the ALJ to give significant weight to Dr. Cohen's opinions, that argument also fails.

The regulations provide that, as a general rule, the opinions of treating sources are entitled to more weight than opinions from sources who merely examine a claimant or sources who neither treat nor examine a claimant. See 20 C.F.R. §§

404.1527(c)(1)-(2) & 416.927(c)(1)-(2).  Dr. Cohen was a

treating source.

With respect to the length of the treatment relationship

and the frequency of examination, the regulations provide that

"[g]enerally, the longer a treating source has treated [a

claimant] and the more times [the claimant has] been seen by a

treating source, the more weight [the SSA] will give to the

source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2)(i) &

416.927(c)(2)(i).  Dr. Cohen treated Liberi for 16 months before

rendering the opinions at issue, and he saw her once a month for

five months before rendering those opinions.

With respect to the nature and extent of the treatment

relationship, the regulations provide that "[g]enerally, the

more knowledge a treating source has about [a claimant's]

impairment(s) the more weight [the SSA] will give to the

source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2)(ii) &

416.927(c)(2)(ii).  Dr. Cohen prescribed multiple medications

for Liberi's mental impairments and frequently adjusted her

dosages, which demonstrates knowledge of her impairments.

With respect to supportability, the regulations provide

that "[t]he more a medical source presents relevant evidence to

support an opinion . . . the more weight [the SSA] will give

that opinion." 20 C.F.R. §§ 404.1527(c)(3) § 416.927(c)(3).  As noted above, Dr. Cohen's questionnaire presents clinical findings, medical signs, and narrative explanations.

Finally, with respect to specialization, the regulations provide that the SSA will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5). Dr. Cohen was a psychiatrist rendering opinions on Liberi's mental impairments.

While the evidence does not compel a determination that Dr. Cohen's opinions are entitled to great weight, they surely do not preclude such a determination.  That is enough to scuttle the Acting Commissioner's apparent argument that there is no evidence to support a determination that Dr. Cohen's opinions are entitled to any more than the "little weight" they were given by the ALJ.

In sum, the ALJ did not give good reasons for discounting Dr. Cohen's opinions, and the court is not persuaded by the Acting Commissioner's argument that remand would be futile.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for

an order affirming her decision, document no. 13, should be denied, and Liberi's motion to reverse that decision, document no. 9, should granted to the extent that this matter is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court should be directed to enter judgment in accordance with this order and close the case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

September 15, 2017

cc:  Laurie Smith Young, Esq.
     T. David Plourde, AUSA